Turley, J.
delivered the opinion of the court.
This is an action of assumpsit, brought by the plaintiff in error, *530 against the defendants, as endorsers of a promissory note, under the following circumstances: Defendants were partners, trading under the firm and style of Chaffin, Kirk & Co., at Columbia and Pulaski, Tennessee, and Yerger, Chaffin & Co., New Orleans. This partnership was dissolved, and publication thereof duly made as follows:
“Dissolution. The houses of Yerger, Chaffin & Co., New Orleans, and Chaffin, Kirk & Co., Columbia and Pulaski, are this day dissolved by mutual consent; either of the parties are author-ised to use the name of the firm in liquidation, only, of the past business.”
After this dissolution, the note which forms the basis of this transaction, was endorsed in the name of the firm, to the plaintiff in error.
John M. Bell and John K. Yerger, two members of the firm, plead non-assumpsit. John Kirk, Ed. H. Chaffin and A. Van Wyck, the others, in addition thereto, further plead, that the endorsement upon which they are sought to be charged, is not their act and deed. Upon the trial, the jury found a verdict in favor of the plaintiff against John M. Bell and John K. Yerger, and against him in favor of J. Kirk, E. H. Chaffin and A. Van Wyck, and judgment given accordingly; to reverse which this record is filed under the provisions of the act of assembly, and the opinion of the court asked thereon.
It is to be observed, that the bill of exceptions does not contain the facts of the case; the verdict and judgment are, therefore, conclusive upon the rights of the parties, unless there be error in the charge of the judge, upon some question of law arising in the case. This, it is said, there is, in this: the court was requested to charge the jury, that the sentence in the articles of dissolution, that “each of the parties is authorised to use the name of the firm in liquidation, only, of the past business,” without more evidence, authorised any member of the firm to use the name of the firm in drawing or endorsing notes or bills, in renewal of past notes or bills drawn or endorsed by the firm, which the court refused to do, but on the contrary, charged, that this clause in the articles of dissolution did not of itself confer the power on any of the partners to bind the firm on notes or bills made or endorsed for renewal of former liabilities; that the word liquidation was not technical, but still had a definite meaning; that it meant the act of settling and adjusting accounts; *531 in other words, to liquidate mercantile business, signified to receive and pay.
It would be found difficult, we apprehend, even if this charge were erroneous, to reverse, therefore, as this,case stands.
This record does not show, whether the debt for which this endorsement was made, was a debt precedent or subsequent to the dissolution of the partnership, and when the bill of exceptions does not contain the proof, facts will be intended in favor of a verdict. But in as much as this case has been argued on both sides, as if it appeared, that the endorsement was made in renewal of a precedent liability, we will so consider it, and upon that point alone determine it.
It is not denied by the plaintiff in error, that as a general proposition, the power which one partner has to bind his co-partner by a new contract, ceases on the dissolution of the firm; but it is contended, that this case does not fall within the proposition, because of the power given in the terms of the dissolution to each member of the firm to use the name of the firm in liquidation of the past business. The whole argument Then rests upon the word “liquidation;” this is a subject difficult to reason about; it has been correctly said, that it is not a technical term, and, therefore, can have no legal meaning; it is not shown to be a commercial phrase, giving by the custom of merchants greater latitude of power to the members of a dissolved firm, than they would have had without it, in the settlement of the business of the firm, and we, therefore, cannot say, that it has a commercial meaning, different from that which it has in common parlance. What, then, is the common parlance meaning of the word liquidation? It appears to be a word of French origin, and is, in the Dictionary of the French Academy, said to be “a term of jurisprudence, of [finance and of commerce; the action by which one determines, or fixes that, which has been indeterminate in every species of accounts; liquidation of expenses, of interest, of accounts; liquidation of profits, liquidation and partition of a succession. He labors for a liquidation of his debts, of his effects, of his accounts.” Webster defines the word liquidate, “to pay, settle, adjust and satisfy.”
From this meaning of the word, as established by these high French and American authorities, it would appear ■ manifest, that the words liquidate and liquidation, when applied to a bill, bond or note, or bill of exchange, means a payment and satisfaction thereof, *532 there being nothing else to liquidate, there being nothing else indeterminate, the amount due, and the date of payment, being already fixed by contract. When applied to open accounts, they mean a settlement and adjustment of the accounts, by which the amount due is to be ascertained by mutual examination by the parties interested.
If this meaning be correct, as we think it is, what power is given to the different members of the firm of Chaffin, Kirk & Co., and Yerger, Chaffin & Co., to bind each other, by the use of the nameof the firm in liquidation, only, of past-business? Clearly, no more than to sign the name of the firm to an acknowledgment of an unsettled account, which upon examination may be found to be against them, to give receipts for money paid for debts due to the firm, and to take receipts for money paid by it.
But it is said, if this is all, then the word “liquidation” hath no effect whatever, for this they would have had the power by law to do, unless restricted by the terms of the dissolution. So we think. When a firm is dissolved, each member of the firm may be actively employed in the settlement of its affairs, and as such, may acknowledge in the name of the firm, all just accounts, not barred by the statute of limitations, sign and receive receipts for monies received and paid in the name of the firm, and the firm shall be bound thereby, unless by the terms of the dissolution, properly made known, that power is restricted to a portion of the firm, to the exclusion of the rest, and the usé of the word liquidation, neither extends nor limits this power. This, we think, is the fair conclusion from the meaning of the word liquidation.
Let us now see, whether the authorities, instead of conflicting with this view of the case, does not sustain it ?
In Chitty’s treatise on Contracts, page 81, it is said, “After the dissolution of a firm, and due notice thereof given, when necessary, it is not in the power of one of the parties who composed the firm, to bind the other by putting the partnership name on any negotiable security, even though it existed before the dissolution, or was for the purpose of liquidating the partnership debts, and the party signing was authorised to settle the partnership affairs.” 3d Esp. R. 108: 1st Camp. 231, 10th East, 418. To the same effect is Chitty on Bills, 61.
In Watson on Partnership, page 209, it is said: “The power of one partner to bind the firm by a negotiable security, ceases with *533 the existence of the partnership. The partnership being dissolved, even a power to receive and pay all debts due to and from the partnership, will not authorise one of the late partners to endorse a bill of exchange in the name of the partnership, though drawn by him in that name, and accepted by a debtor of the partnership, after dissolution.”
In the case of McPherson vs. L. Rathbone and others, reported in 11th Wend. 96, the supreme court of New York says, “though one partner cannot bind his co-partner by note after the dissolution; yet he may liquidate a previous account.”
These authorities, we think, fully sustain the position, that the Word “liquidation” confers no greater power, than the different members of the firm would have had without it, and that it does not extend to the renewal of negotiable securities. We see, that Mr, Chitty uses the word as synonymous with payment, where it is applied to liquidated debts, and that he denies the power of one member of a dissolved firm, to bind the other by a negotiable security, though given in liquidation of ail unsettled account, he being au-thorised to settle the partnership affairs,
The supreme court of New York uses it as synonymous with the term, settlement, or adjustment of an unsettled account.
To hold that the word “liquidation” gives a greater power than the words “to settle the partnership affairs,”* or the words “to receive and pay all debts due to and from the partnership,” would, we think, not only be at war with philology, but with a sound practical exposition of the law.
When partnerships are dissolved, it is not only for the interest of parties, but the harmony of society, that the business should be settled as soon as possible. How can that be done, if any one of the firm may at his pleasure, without the knowledge and consent of the others, renew the negotiable securities at his pleasure ? They may in this way be kept alive for years, and persons utterly ruined long after they had supposed themselves discharged from all liabilities. The power is a dangerous one, and we will never raise it by implication: it must be expressly given, if it is expected to be enforced; this the word liquidation does not do.
We are, therefore, of opinion, that there is no error in the judgment of the court below, and affirm the same.

 Sec Jefferson’s Works, vol. 1, p. 348.